NOT FOR PUBLICATION

POSTED ON WEBSITE

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re                                            )  Case No. 12-15487-B-7
                                                 )
Anthony Vincent Leonis,                          )  DC No. TGM-7
                                                 )
              Debtor.                            )
_____)

**MEMORANDUM DECISION REGARDING
APPLICATION FOR COMPENSATION**

Attorney Trudi G. Manfredo, Esq. ("Counsel") filed her first and final application for compensation under 11 U.S.C. § 330 (the "Fee Application"). Counsel was authorized to serve as the attorney for chapter 7 trustee Randell Parker ("Trustee"), on November 15, 2012. The Fee Application is opposed by James and Mary Jane Cieciorka ("Creditors"), who object to the allowance of approximately 10% of the fees as being unnecessary or not adequately explained (the "Objection"). The matter came on for a hearing on January 7, 2016, and was taken under submission following oral argument. For the reasons set forth below, the Objection will be overruled and the Fee Application will be approved.

This memorandum decision contains findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7052.[1] The

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of

bankruptcy court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157, 11 U.S.C. §§ 330 and 331 and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A).

**Background and Findings of Fact**.

This chapter 7 bankruptcy case was filed on June 20, 2012, by Anthony Vincent Leonis (the "Debtor"). The Debtor's Schedule A listed four real property assets including a one-third ownership in a timeshare in New Zealand (the "Timeshare"), and a one-half ownership in a Livermore parcel (the "Real Property"). The Debtor used Cal.Civ.C. § 703 to claim exemptions on Schedule C, *inter alia*, as to the Real Property. The "Livermore parcel" was one parcel consisting of 320 acres of bare land which had been used by the Debtor and co-owners, Garry and Ruth Stoddard (the "Co-Owners"), as a hunting preserve. The Debtor listed a judgment lien in the amount of $288,794 (the "Judgment Lien") on Schedule D that was secured by the Real Property. This claim represented the liquidation of the Creditors' claim (the "Judgment") and was the subject of an avoidance action by the Trustee.

Upon her appointment in November 2012, Counsel was faced with several daunting tasks. The primary adventures for the Trustee were the sales of the Debtor's one-third interest in the Timeshare and his one-half interest in the Real Property. The sale of the Real Property, however, was complicated by several obstacles, including the vigorously defended litigation the sale required. In addition, the property spanned two adjacent counties complicating the impact of the Judgment Lien on the title to the Real Property.

Further compounding matters, the Debtor filed a chapter 13 case while this

---

2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

chapter 7 case was still pending, filing schedules in the second case that listed assets already part of the chapter 7 estate and forcing the Trustee, through Counsel, to litigate within the chapter 13 to preserve the chapter 7 estate.

In order to sell the Real Property, the Trustee and Counsel were forced to resolve both opposition by the Co-Owners, who demanded that the Real Property be partitioned, and the Creditors' assertion of the right to credit-bid their Judgment Lien. After the Trustee prevailed on both counts, the Real Property was sold to the highest of the four bidders. The sale did not end the feud. The Creditors, who were the highest bidders, also challenged the payment of the broker's commission and requested many changes to the proposed Vacant Land Purchase Agreement and Joint Escrow Instructions dealing with the property sale, all of which consumed additional time and effort.

Only the professional fees for two of Counsel's tasks raise the Creditors' dissent.[2] First, the necessity for services objecting to the plan filed in the Debtor's concurrent chapter 13 case (the "Plan Objection"), and, second, the necessity for the Federal Rule of Bankruptcy Procedure 2004 examination of the Debtor taken in late 2015 (the "Exam"). A brief discussion of each follows.

**The Chapter 13 Case.** Less than six months after this chapter 7 case was filed, the Debtor filed a separate chapter 13 bankruptcy case and proposed a chapter 13 plan.[3] The Trustee, through Counsel, opposed confirmation of the plan. In her response to the Objection, Counsel explained that the schedules filed in the chapter 13 case included assets that were still part of this chapter 7 case and that the opposition to confirmation was needed to protect the chapter 7

---

[2]The Creditors also objected to an apparent duplicate time entry which Counsel conceded in her reply and, at the hearing on January 7, 2016, conceded $442.50 should be deducted from her fee request as a duplicate entry.

[3]See case no. 12-60132 filed in this District.

3

estate.[4] The Trustee's opposition yielded a stipulation by the Debtor that the chapter 13 estate would include only assets abandoned by the Trustee.

**The Rule 2004 Exam.** The Trustee and the Debtor were at a stalemate regarding the latter's production of records about certain assets. In addition, the Debtor's questionable withdrawals from one or more bank accounts were not adequately explained. After the failure of informal methods, formal discovery ensued with Counsel preparing for and conducting the Exam with production of documents. As a result of the Exam the Trustee discovered undisclosed assets in the form of accounts receivable. The Debtor and the Trustee stipulated that the Debtor would "trade" his exemption in the Real Property sale proceeds for an exemption in the accounts receivable, which he had already received. The Debtor amended his exemption schedule as agreed which provided approximately $13,000 for the chapter 7 estate.

**Analysis and Conclusions of Law.**

Review of estate professional's fees begins with applying the Bankruptcy Code's relevant provisions. 11 U.S.C. § 330(a)(1)(A) and (B) permit approval of "reasonable compensation for actual, necessary services rendered by ... [an] attorney."[5] A determination of "reasonableness" under 11 U.S.C.§ 330 is

---

[4]An adversary proceeding requesting the bankruptcy court determine which estate had an interest in the questioned property (see, Federal Rule Bankruptcy Procedure 7001(2)) would be another avenue.

[5]Professional compensation for persons employed to work for the bankruptcy estate is governed by § 330(a) which provides in pertinent part:

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, . . . the court may award . . . a professional person employed under section 327 or 1103–

(A) reasonable compensation for actual, necessary services rendered by the . . . professional person, or attorney . . . ; and

(B) reimbursement for actual, necessary expenses.

4

achieved by answering the following five questions:

(1) Were the services authorized?

(2) *Were the services necessary or beneficial to the administration of the estate at the time they were rendered?*

(3) Are the services adequately documented?

(4) Are the fees requested reasonable, taking into consideration the factors set forth in section 330(a)(3)?

(5) Did the professional exercise reasonable billing judgment?

*In re Strand*, 375 F. 3d 854, 860 (9th Cir. 2004) (citing *Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co. (In re MEDNET, MPC Corp.)*, 251 B.R. 103, 108 (B.A.P. 9th Cir.2000) (emphasis added). Here, the inquiry is narrow. There is no dispute as to items (1), (3), (4) and (5). The focus is the

---

(2) The court may, on its own motion or on the motion of . . . any other party in interest, award compensation that is less than the amount of compensation that is requested.

(3) In determining the amount of reasonable compensation to be awarded to . . . [a] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including–

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

5

second item, the "necessity" for the Plan Objection and the Exam.[6]

A court shall not allow compensation for "services that were not reasonably likely to benefit the debtor's estate" or "necessary to the administration of the case." Section 330(a)(4). To meet this standard, an applicant need only demonstrate that services provided were reasonably likely to benefit the estate at the time the services were rendered. *In re MEDNET*, 251 B.R., 108. "When a cost benefit analysis indicates that the only parties who will likely benefit from [a service] are the trustee and his professionals," the service is unwarranted and a court does not abuse its discretion in denying fees for those services. *In re Riverside-Linden Investment Co.*, 925 F.2d 320, 321 (9th Cir., 1991) (citation and internal quotation marks omitted). "Services that are reasonably likely to provide an identifiable, tangible and material benefit to the estate can be compensated, *even if they do not actually provide such a benefit*." *In re Smith*, 317 F.3d 918, 926 (9th Cir., 2002) (emphasis added), abrogated on other grounds by *Lamie v. United States Trustee*, 540 U.S. 526, 124 S.Ct. 1023 (2004).

While an evaluation of "necessity" requires some application of "Monday morning quarterbacking," the case, *Unsecured Creditors' Committee v. Puget Sound Plywood*, 924 F.2d 955, 958-59 (9th Cir., 1991) provides some guidance. Before embarking on a voyage at creditor expense, counsel for the estate should consider:

/ / / / / /
/ / / / / /
/ / / / / /
/ / / / / /

---

[6] While "reasonable billing judgment" is implicated in a review of "necessity," Creditors here do not claim Counsel over charged the estate.

> (1) Is the burden of the probable cost of legal services disproportionately large in relation to the size of the estate and maximum probable recovery?
>
> (2) To what extent will the estate suffer if the services are not rendered?
>
> (3) To what extent may the estate benefit if the services are rendered and what is the likelihood of the disputed issues being resolved successfully?

*Puget Sound Plywood*, 924 F.2d at 958-59, citing with approval, *In re Wildman*, 72 B.R. 700, 707 (N.D. Ill., 1987).

In their challenge to the Fee Application the Creditors rely heavily on a district court decision in this Circuit, *In re Mohsen*, 506 B.R. 96 (N.D. Cal., 2013) ("by negative implication, a court may award compensation if the services rendered were reasonably likely to benefit the debtor's estate.") In that case, the district court affirmed the bankruptcy court's determination that the challenged services were necessary and were reasonably likely to benefit the estate at the time the services were rendered. *Id*, 106-110. For reasons set forth below, *Mohsen* is of little assistance to Creditors.[7] Now, to the challenges at hand.

**Chapter 13 case.** Among the duties of a chapter 7 trustee is to close a case as expeditiously as possible as is compatible with the best interests of the parties in interest. Section 704(a)(1). A trustee must also be accountable for all property received. Section 704(a)(2). The Trustee here was faced with the quandary of competing estates created when the Debtor filed a chapter 13 case

---

[7] In *Mohsen*, the district court also affirmed the bankruptcy court's ruling that certain fees charged for other services were excessive and upheld the bankruptcy court's application of a compensation rate other than the ubiquitous "lodestar." *Id* at 110-114. Here, Creditors do not challenge the amount of fees charged by Counsel other than challenging their "necessity."

shortly after filing this case; this chapter 7 case was still pending and the Trustee had not completed his investigation of assets. In the chapter 13 case, the Debtor listed the same assets, which were still under the Trustee's control.

The Trustee needed to instigate opposition to confirmation since a confirmed chapter 13 plan would bind all creditors. See Section 1327(a). Counsel here chose to object to confirmation of the plan to bring the issue to the forefront. Had nothing been brought to the court's or the chapter 13 trustee's attention before confirmation, numerous complex and expensive challenges to the confirmation order would have undoubtedly followed. One benefit to this estate was maintenance of the *status quo ante* despite the pending chapter 13 case. The stipulation clarifying that the assets listed by the Debtor in his chapter 13 estate-- assets originally in this case– would remain in the chapter 7 estate unless and until abandoned by the Trustee resolved this issue. See Section 554. The estate also benefitted by avoiding post-confirmation litigation. The amount at issue, $1180.50, is not unreasonable for preparation of an objection, an appearance and minimal follow up. At the threshold of this journey, Counsel's evaluation was reasonable and well within the cost-benefit rubric. These services were necessary and thus compensable.[8]

**The Rule 2004 Exam.** A foundational duty of a chapter 7 trustee is to investigate the financial affairs of the debtor. See Section 704(4). Discharge of that duty without court intervention was thwarted by the Debtor's intransigence, stalling the Trustee's numerous attempts seeking voluntary surrender of

---

[8]The district court in *Mohsen* specifically pointed to litigation "necessary to maintain the estate's ownership of funds" as necessary services. *Mohsen*, 506 B.R. at 108-109.

documents relating to the "questionable withdrawals."[9] The next logical step was "formal" compulsion of document production and testimony.

Counsel prepared the document request and the documents necessary for the 2004 examination. After document production and testimony, the Debtor and the Trustee reached an agreement whereby approximately $13,000.00 was added to the chapter 7 estate. The benefit to the estate of this venture is retrospectively easily quantified. Counsel's prospective analysis of the value of these efforts was also appropriate. Whether the estate would actually financially benefit was always a risk – one common in bankruptcy litigation. Here, the Trustee had three choices: continue to encourage voluntary compliance with Debtor's duties to provide information under Section 521(a)(3) and (4) – likely unavailing; proceed with formal compulsion of information production–which was ultimately successful; or "abandon ship"– which would compromise the Trustee's duties. Faced with those alternatives, the evidence submitted by Counsel supports the decision to conduct the Exam.[10] These services were necessary and compensable.[11]

//////

---

[9]The documents submitted in support of the fee application show no fewer than seven requests for this information from the Debtor or his agents over a three year period. A complete response to the requests for voluntary compliance with the Debtor's duties under 11 U.S.C.§ 521(a) (3) and (4) was not forthcoming.

[10]The Creditors challenged the fees for this work based on a lack of evidence as to their necessity and an allegation that the benefit to the estate was not quantified or explained. In reply to the Creditor's objection, Counsel submitted additional specific information that explained the historical context of the issue and provided more detail on the process. At the hearing January 7, 2016 Creditors' counsel essentially admitted as much by "submitting" on that issue without further argument or challenge.

[11]Even the Creditors' oft cited *Mohsen* decision finds services related to a questioned 2004 examination and production of records compensable because such services "potentially identify assets recoverable for the estate." *Mohsen*, 506 BR at 109-110.

9

**Conclusion.**

Based on the foregoing, the court finds and concludes that the fees billed by Counsel in the Fee Application were actual, necessary and reasonable. Accordingly, the Creditors' Objection will be overruled and Counsel's Fee Application will be approved. The fee application is approved in the amount of $30,334.50 in fees and $682.83 in expenses.[12] A separate order shall issue.

Dated: 28 January 2016

René Lastreto II
United States Bankruptcy Judge

---

[12] The fees awarded reflect Counsel's conceded reduction of $442.50.

**Instructions to Clerk of Court**
**Service List - Not Part of Order**/Judgment

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the BNC or, if checked _____ the U.S. mail.

Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if appointed in the case), and __X__ Other Persons Specified Below:

Trudi G. Manfredo, Esq.
Attorney at Law
377 W. Fallbrook Ave., Suite. 102
Fresno, CA 93711

Ian A. Kass, Esq.
Attorney at Law
96 North Third Street, Suite 525
San Jose, CA 95112

Office of the U.S. Trustee
U.S. Courthouse
2500 Tulare Street, Suite 1401
Fresno, CA 93721